[Civ. No. 2640.   Fourth Dist.—April 25, 1941.]

BEN H. BROWN, as Administrator, etc., et al., Appellants, v. ANGUS W. MacDOUGALL, Respondent.

George W. McDill for Appellants.

S. S. Hahn and W. O. Graf for Respondent.

BARNARD, P. J.—This is an action by the heirs of Thomas Coughlan and the administrator of his estate to recover certain money and property which had formerly been owned by the deceased, but which at the time of his death stood in the

name of Coughlan and the defendant as joint tenants, with the right of survivorship.

Early in 1934, Coughlan went to a hospital and later to a sanitarium where he died on October 25, 1934. He had been friendly with the defendant for about thirteen years and on March 17, 1934, at his request, $1,000 was moved from one of his savings accounts to a checking account and the defendant was authorized to sign checks thereon as Coughlan's attorney-in-fact. This arrangement was carried through by the defendant who went to the bank and inquired how it could be done and took the necessary papers to Coughlan for his signature. At the same time Coughlan told the defendant to take out $50 a month for his trouble, which the defendant did. On March 26, 1934, two of Coughlan's savings accounts were changed into joint tenancy accounts in the names of Coughlan and the defendant, with the right of survivorship, and on May 21, 1934, Coughlan's checking account was likewise changed to such a joint tenancy account. On July 2, 1934, Coughlan's safe deposit box, containing the personal property in question, was changed to a similar joint tenancy. In connection with the creation of each of these joint tenancies, forms furnished by the banks were signed by Coughlan and by the defendant.

It also appears that in 1931, a lawyer named McCann drew a will for Coughlan, in which he named his sister, who lived in Ireland, and her heirs as beneficiaries. Coughlan had never seen these heirs, who are joined as plaintiffs in this action. In 1932, Coughlan received a letter stating that his sister in Ireland had died. Shortly thereafter, Coughlan told McCann that his sister had died, that he had nobody in Ireland in whom he took an interest, and that he was going to change his mind. Two weeks later he returned and asked for the will, telling McCann that he had changed his mind. He took the will away with him and the same was never found. After his sister's death, Coughlan wrote, or had written for him, several letters to his brother-in-law in Ireland or to other relatives there. In the first of these, after speaking of the death of his sister, he spoke of some mining claims which he said he hated to give up, and said "It is not for myself but I'd like to make a good-sized stake and leave it to the children". He also said he had made a will a couple of years before in favor of his sister and the children, and then

stated that he had gone to a lawyer, McCann, who had said he would write to them. In another letter, dated January 10, 1934, he asked his brother-in-law if he had heard from McCann. On October 28, 1934, the defendant wrote a letter to the brother-in-law in Ireland telling him of the death of Coughlan and saying that at times during his illness Coughlan had worried about having money to pay for everything, that he did have enough to carry him through, and that all of his wishes had been carried out the way he intended them to be. On October 9, 1935, McCann answered a letter from some solicitors in Ireland telling them that to the best of his knowledge and belief Coughlan left no estate, that he had created a joint account with this defendant of what money he had, and that the defendant had come into possession of the remainder by right of survivorship.

There was also evidence that during the year before he died Coughlan told two priests that he intended to leave all he had to relatives in Ireland. After the death of his sister Coughlan told another witness that there was nobody else in whom he was interested, that he was better taken care of then than at any time in his life, and that the defendant could have anything he had left. During the time Coughlan was in the hospital and sanitarium the defendant saw him about three times a week, wrote checks for his bills and wrote some letters for him. There is an entire absence of evidence as to what occurred in connection with the creation of the various joint tenancies and all that appears in the record is the instruments creating them.

This action followed. The complaint alleged that at the time of his death Coughlan possessed money and personal property to the amount of $13,821.23, that the defendant immediately after the death of Coughlan secured possession of all of his property for the use and benefit of, and as trustee for, his estate and his heirs, and that the defendant, upon securing such possession, converted all of said money and property to his own use. The answer, among other things, alleged that Coughlan at the time of his death was the owner in joint tenancy with the defendant, with the right of survivorship, of this property and that by reason of said joint tenancy the defendant had become the sole owner thereof. The court found in favor of the defendant and this appeal followed.

The appellants contend that because the respondent was the agent of the deceased there is a presumption of fraud and undue influence in connection with the execution of the joint tenancy in question; that the respondent failed to meet the burden of overcoming that presumption; and that, under these circumstances, either a resulting or a constructive trust arose in favor of the appellants under which it must be held that the respondent, in taking possession of the property after the death of Coughlan, took the same as a trustee for the appellants.

The most important question is whether the record discloses that the respondent sustained the burden resting upon him to overcome the presumption of fraud and undue influence which would ordinarily arise from the fact that he had been acting as the agent of the deceased. There is no proof of actual fraud in connection with the creation of the joint tenancies and the most that can be said is that there is some evidence to the effect that the deceased, after the death of his sister, had at times expressed an intention of leaving his property to his sister's children. The appellants place considerable reliance on the fact that McCann, after the death of Coughlan, wrote a letter to the solicitors in Ireland in which he said that to the best of his knowledge and belief Coughlan had left no estate. It is argued that this must have been inspired by the respondent and that it shows a guilty intent to mislead the heirs in Ireland. Not only does it not appear that the respondent is responsible for the making of this statement, but in the same letter McCann told the solicitors that before his death Coughlan had created a joint account with the respondent of what property he had and that the remainder had gone to the respondent by right of survivorship.

Conceding that the burden rested upon the respondent of overcoming the presumption of fraud and undue influence in connection with the execution of these joint tenancies, which presumption arises from the fact that the respondent had acted as agent for the deceased, we are of the opinion that the respondent met this burden and that a portion of the evidence, aside from the stipulation, is sufficient to sustain the court's findings. Moreover, the appellants in effect stipulated at the trial that there was no fraud or undue in-

fluence in this connection and it is unnecessary to further review the other evidence which sustains the judgment.

Early in the trial the attorney for the appellants stated: "No question raised on our part with reference to the joint tenancy being complete and in full effect as a joint tenancy." The court then stated: "Then, the stipulation in the record is, that both counsel stipulate that the joint tenancy was a complete joint tenancy and that all steps necessary to set forth and establish a joint tenancy have been done." The attorneys for both parties agreed and the court then said: "The stipulation then, is accepted by the court and therefore will be marked as evidence." Shortly thereafter it was stipulated "that the legal tenor and effect of those cards (referring to the joint tenancy cards) will determine the ownership and the evidence here." A little later the attorney for the appellants stated that he raised no question as to the mental competency of Coughlan and then when he was asked if he was raising any question of fraud or undue influence, he replied: "The fraud, such as it is, begins at the point, according to our theory—where the defendant took the money— took the proceeds of these accounts and failed to turn over the residue to the legal heirs, or to the administrator of the estate. That has nothing to do with any testimony that Mr. Graf might be able to introduce at all, and there is no evidence of any sort up to that point." When the court then asked if it was stipulated that there was no fraud or undue influence prior to the death of Coughlan, the attorney for the appellants made an evasive answer.

The stipulation that these joint tenancies were complete, that they were in full effect, and that all steps necessary to set forth and establish them as joint tenancies had been done, necessarily conceded that there was no fraud or undue influence in connection with their creation. The case was apparently tried on the theory that while these joint tenancies were properly created, there was fraud of some sort on the part of the respondent, after the death of Coughlan, as a result of which the heirs had been deprived of the property. No evidence disclosing any such fraud appears in the record. It is now further argued in appellants' briefs that the respondent did not meet the burden resting upon him because of the presumption of fraud arising from the fact that he was the agent of the deceased. Aside from other considera-

496

tions it would be unfair to decide the case on appeal on that ground after the respondent had been misled by the stipulations to which we have referred. Regardless of the rule relied upon, these stipulations and the other evidence sustain the court's findings and the judgment.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 23, 1941.